1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAMELA S. RENDON,

11          Plaintiff,                    No. CIV S-05-1665 PAN

12      vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15          Defendant.                    ORDER
     _____/
16

17          The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Supplemental

20   Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will deny Plaintiff's motion for summary judgment, deny the

22   Commissioner's cross-motion for summary judgment, and remand this matter for further

23   proceedings consistent with this order.

24   /////

25   /////

26   /////

                                        1

1  I.  Factual and Procedural Background

2          In a decision dated March 17, 2005, the ALJ determined Plaintiff was not

3  disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals

4  Council denied Plaintiff's request for review.  The ALJ found Plaintiff had not engaged in any

5  significant gainful activity since the alleged onset date of impairment; Plaintiff complained of

6  migraine headaches, neck and back pain, and post traumatic stress disorder (PTSD).  The ALJ

7  further found that Plaintiff did not suffer from any severe impairments; and plaintiff was not

8  disabled.  Administrative Transcript ("AT") 19.

9  /////

10

11          [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
   is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) &
   1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
   following summarizes the sequential evaluation:

15
           Step one:  Is the claimant engaging in substantial gainful
16  activity?  If so, the claimant is found not disabled.  If not, proceed
   to step two.
17          Step two:  Does the claimant have a "severe" impairment?
   If so, proceed to step three.  If not, then a finding of not disabled is
18  appropriate.
           Step three:  Does the claimant's impairment or combination
19  of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
   404, Subpt. P, App.1?  If so, the claimant is automatically
20  determined disabled.  If not, proceed to step four.
           Step four:  Is the claimant capable of performing his past
21  work?  If so, the claimant is not disabled.  If not, proceed to step
   five.
22          Step five:  Does the claimant have the residual functional
   capacity to perform any other work?  If so, the claimant is not
23  disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
   process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

1   plaintiff makes several arguments in her summary judgment motion.  First, Plaintiff argues that

2   remand is required in order to permit the consideration of new and material evidence presented to

3   the Appeals Council following issuance of the ALJ's decision.  Second, Plaintiff contends that

4   the ALJ erred by finding that Plaintiff did not suffer from any severe impairments.  Finally,

5   Plaintiff argues that the ALJ improperly found that Plaintiff's complaints of physical and mental

6   impairment were less than fully credible.

7   II.  Standard of Review

8           The court reviews the Commissioner's decision to determine whether (1) it is

9   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

10  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

11  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

12  Substantial evidence means more than a mere scintilla of evidence, but less than a

13  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

14  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

15  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

16  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

17  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

18  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

19  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

20  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

21  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22  substantial evidence supports the administrative findings, or if there is conflicting evidence

23  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

24  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

26  1335, 1338 (9th Cir. 1988).

1  III.  <u>Analysis</u>

2      a.  <u>Remand for Consideration of Additional Evidence Presented by Plaintiff After the</u>
3  <u>Issuance of the ALJ's Findings Is Not Required.</u>

4          The ALJ issued his opinion on March 17, 2005.  On April 24, 2005, Plaintiff
5  submitted additional evidence to the Appeals Council for consideration.  AT 207.  Included in
6  this additional evidence was a functional capacity assessment from Dr. Flores, AT 211-15, as
7  well as medical records documenting Dr. Flores' treatment of Plaintiff, AT 216-282.  The
8  Appeals Council denied Plaintiff's appeal on July 18, 2005.  AT 5.

9          The parties have incorrectly characterized the submission of this additional
10  evidence.  Plaintiff argues that the evidence is "new and material" evidence that should be
11  considered by the Appeals Council.  (Pl.'s Mot. Summ. J. 5.)  The Commissioner replied
12  accordingly.

13          However, as the denial of Plaintiff's appeal makes clear, the Appeals Council
14  considered the additional materials and made Dr. Flores' functional assessment and the attached
15  medical records part of the administrative record.  AT 5, 8.  Accordingly, this court will review
16  the ALJ's decision under the substantial evidence standard with due consideration of Dr. Flores'
17  report.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179-80 (9th Cir. 2000)(where Plaintiff submitted
18  additional materials to the Appeals Council in requesting review of the ALJ's decision, the court
19  may properly consider the additional materials because the Appeals Council addressed them in
20  the context of denying Plaintiff's request for review); <u>see also</u> <u>Ramirez v. Shalala</u>, 8 F.3d 1449,
21  1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision
22  of the ALJ after examining the entire record, including new material, court considers both the
23  ALJ's decision and the additional materials submitted to the Appeals Council).  There is no merit
24  in Plaintiff's contention that remand is required simply because materials were submitted to the
25  Appeals Council after the ALJ released his findings.

26  /////

b.  <u>Remand is Required Because the ALJ Erred at Step Two of the Sequential Analysis by
Finding that Plaintiff Does Not Suffer from Severe Physical and Mental Impairments.</u>

Plaintiff complained of multiple impairments.  In her initial application for
benefits, Plaintiff reported that she suffered from migraine headaches, PTSD resulting from
being the victim of rape and molestation, and neck and back pain.  AT 47, 292, 298.  The ALJ
found none of Plaintiff's alleged impairments to be severe.  AT 19.  This finding was in error.

Plaintiff contends that the ALJ improperly assessed the severity of her
impairments and failed to consider all of them in combination.  An impairment is "not severe"
only if it "would have no more than a minimal effect on an individual's ability to work, even if
the individual's age, education, or work experience were specifically considered."  SSR 85-28.
The purpose of step two is to identify claimants whose medical impairment is so slight that it is
unlikely they would be disabled even if age, education, and experience were taken into account.
<u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis
screening device to dispose of groundless claims."  <u>Smolen v. Chater</u> 80 F.3d 1273, 1290 (9th
Cir. 1996);  <u>see also</u> <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001).  Impairments
must be considered in combination in assessing severity.  20 C.F.R. § 404.1523.

Plaintiff argues the ALJ failed to recognize as severe her complaints of migraine
headaches, PTSD, and neck and back pain.  Considered individually and in combination,
Plaintiff's claim that she suffers from a severe impairment of migraine headaches, PTSD, and
neck and back pain has merit.  The medical evidence in the record simply does not support the
ALJ's conclusion that Plaintiff's impairment are not severe.

Plaintiff presented a long and consistent history of impairments and their
treatment.  Despite the absence of definitive objective findings to support Plaintiff's complaints,
doctors found Plaintiff credible enough to prescribe medication and treat her conditions.  The
ALJ's conclusion that Plaintiff does not meet the de minimis standard of step two flies in the face
of the medical evidence and is not supported by substantial evidence in the record.

1    In his findings, the ALJ reviewed the medical history that was available to him.

2    AT 14-16.  On November 17, 1993, Plaintiff underwent an MRI.  AT 189.  The examination

3    found slight prominence of the cerebrospinal fluid (CSF) spaces and mild left ethmoid[2] sinus

4    disease.  Id.  There is no evidence of any subsequent treatment resulting from this referral.

5    Dr. Sokolov directed Plaintiff's treatment starting on May 31, 2002.  AT 128.

6    During the course of her treatment by Dr. Sokolov, Plaintiff complained primarily of headaches

7    and allergies.  Id.  As a result of Plaintiff's complaints, Dr. Sokolov prescribed Imitrex, a

8    medication for migraine headaches.  AT 127.  Plaintiff last saw Dr. Sokolov on September 22,

9    2003.  AT 123.

10   Dr. Sokolov also referred Plaintiff to a neurologist for evaluation of her migraine

11   headaches.  AT 126.  Dr. Ghoshal, a diplomate with the American Board of Neurology, did not

12   find any abnormalities during his examination on July 10, 2002.  Id.  Relying on Plaintiff's

13   medical history, Dr. Ghoshal diagnosed Plaintiff with migraine headaches and prescribed

14   Verelan as a prophylactic treatment.  Id.

15   Joan MacMillan began counseling Plaintiff for her PTSD on June 6, 2003.  AT

16   192-206.  Ms. MacMillan possesses a master's degree in counseling (MSC) and a marriage and

17   family therapy license (MFT).  Plaintiff alleged that she suffered from PTSD as a result of being

18   raped and molested by a cousin at the age of 12.  AT 192, 295.  Ms. MacMillan opined that

19   Plaintiff's PTSD led to her low self-esteem, obesity, and migraine headaches.  AT 170.

20   Dr. Selcon, a board certified internist, examined Plaintiff on November 13, 2003,

21   in response to her physical complaints.  AT 136.  During her examination, Dr. Selcon found

22   nothing remarkable, diagnosing a history of PTSD, migraine headaches, and pain in the neck and

23   back.  AT 139.  Based upon her findings, Dr. Selcon opined that Plaintiff had no functional

24   limitations and was capable of performing a full range of activities in the work place.  AT 140.

25   ─────────────────

26   [2]The ethmoid bone separate the nasal cavity from the brain.

1    A mental examination was performed by Dr. Moghaddas on November 23, 2003.

2  AT 142.  Dr. Moghaddas diagnosed Plaintiff with an adjustment disorder with depressed mood

3  and assigned a Global Assessment of Functioning (GAF) score of 65.[3]  AT 146.  The examining

4  psychiatrist found no significant limitations in Plaintiff's ability to function.  AT 146-47.

5    Upon review of Plaintiff's medical history on December 5, 2003, doctors with the

6  State Agency agreed with Dr. Moghaddas' diagnosis and stated that Plaintiff did not suffer from

7  any severe impairments.  AT 150.  This finding was repeated by the State Agency on April 29,

8  2004.  AT 175.  At that time, the State Agency found Plaintiff's PTSD caused only mild

9  restrictions in Plaintiff's daily activities, social functioning, or concentration, persistence or pace.

10  AT 185.

11    Plaintiff was treated twice by Dr. Toussi.  On her first visit on December 12,

12  2003, Plaintiff complained of back pain and migraine headaches.  AT 166.  An x-ray of

13  Plaintiff's back was normal.  AT 168.  After noting some tightening and spasm in the back

14  muscles, Dr. Toussi recommended that Plaintiff continue to take over the counter medication for

15  her back pain.  Id.  In addition, he prescribed for Celexa, an antidepressant.  AT 166-67.  Dr.

16  Toussi also gave her samples of Relpax, a migraine treatment.  AT 167.

17    On this evidence alone, it is apparent that the ALJ erred in his step two analysis.

18  Multiple physicians diagnosed Plaintiff with migraine headaches.  None of these physicians

19  considered Plaintiff to be malingering, or dismissed her claims.  Indeed, doctors aggressively

20  treated her migraine headaches with powerful prescription medications.

21    Furthermore, evidence supports Plaintiff's claim that she suffers from PTSD.  The

22  State Agency diagnosed PTSD, AT 180, finding that it caused some impairment in Plaintiff's

23

24    [3]GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental

25  Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school

26  function (e.g, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  Id.

1  ability to function, AT 185.  Dr. Moghaddas' GAF score indicates that he considered Plaintiff to

2  have some impairment.  AT 146.

3         The ALJ's error becomes more obvious when the additional evidence presented

4  by Plaintiff to the Appeals Council is considered.  After release of the ALJ's opinion, Plaintiff

5  offered evidence from her treating physician, Dr. Flores.  Dr. Flores' treatment of Plaintiff began

6  on May 5, 2004.  AT 232.  Upon his initial interview, Dr. Flores diagnosed chronic neck pain in

7  spite of Plaintiff's full range of motion and negative x-ray findings.  AT 230.  Treatment for this

8  pain was conservative, consisting of Tylenol, heat, and rest.  Id.

9         Dr. Flores also continued Plaintiff's prescription for Imitrex.  Id.  Later, Topamax,

10 a migraine prevention medication, was added to Plaintiff's treatment regimen.  AT 257.  In

11 addition, Dr. Flores recommended that Plaintiff take a headache class.  AT 224.  An MRI ordered

12 by Dr. Flores found no significant abnormalities as it concerned Plaintiff's migraines, AT 217,

13 and minimal findings for her neck and back pain, AT 216, 218.

14        Dr. Flores referred Plaintiff for treatment by a neurologist, Dr. Wong.  AT 252.

15 As part of her treatment, Plaintiff received acupuncture from Mr. Wang.  AT 264-69, 273.  Over

16 the course of six acupuncture sessions starting on September 20, 2004, and continuing until

17 October 11, 2004, Plaintiff reported consistent improvement in her migraine and neck and back

18 pain.  Id.  In fact, over her last three sessions, Plaintiff reported that her pain was "much better."

19 AT 268, 269, 273.  After her appointment on November 11, 2004, treatment was discontinued for

20 three months.  AT 273.  A progress note on December 17, 2004, reveals that Plaintiff's migraine

21 headaches had decreased in frequency after six sessions of biofeedback training.  AT 275.

22        On February 15, 2005, Dr. Flores opined that Plaintiff was unable to walk, stand,

23 or sit when she was experiencing a migraine headache.  AT 211.  In reaching this conclusion, Dr.

24 Flores wrote that Plaintiff experienced "vice-like" headaches that came from the base of her neck

25 and were aggravated by suboccipital trigger points.  AT 213.  Dr. Flores limited Plaintiff to

26 occasional balancing, stooping, crouching, kneeling, crawling, or bending, and stated that her

1  ability to reach, handle, push, pull, see, and speak was affected by her migraines as well as her

2  neck and back pain.  AT 213.

3       While the ALJ did not consider Plaintiff's treatment by Dr. Flores because it was

4  presented after his findings in this case, it follows a consistent pattern found throughout the

5  record.  However, unlike the other providers in the record, Dr. Flores offered a functional

6  assessment of Plaintiff's condition indicating that her migraine headaches and neck and back

7  pain had some impact on her ability to work.  Given the history of Plaintiff's treatment and the

8  multiple medical opinions in the record, the ALJ's conclusion that Plaintiff does not suffer from

9  a severe impairment is in error.

10      The burden is on plaintiff at step two of the sequential evaluation.  See Tidwell v.

11  Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff has met her de minimis burden by offering

12  evidence from Dr. Flores of how Plaintiff's conditions impacts her ability to engage in basic

13  work activities.  See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)("An impairment or

14  combination of impairments may be found 'not severe *only if* the evidence establishes a slight

15  abnormality that has no more than a minimal effect on an individual's ability to work.'")(quoting

16  Smolen, 80 F.3d at 1290 (internal quotation marks omitted)(emphasis added)).  The ALJ's

17  finding that Plaintiff does not suffer from a severe impairment is not supported by substantial

18  evidence in the record.  There was error in the step two analysis.

19      The ALJ spent a significant portion of his opinion assessing Plaintiff's credibility.

20  AT 16-19.  Indeed, it was primarily because the ALJ did not believe Plaintiff's complaints that he

21  concluded that she did not suffer from any severe impairments.  Credibility determinations do

22  factor into evaluations of medical evidence.  Webb, 433 F.3d at 688; see e.g. Batson v. Comm'r

23  of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  However, the ALJ made no effort to

24  tie his assessment of the severity of Plaintiff's complaints to the medical evidence or opinions

25  before him.  While many of the medical diagnoses contained in the record relied upon Plaintiff's

26  self-described history, the ALJ made no findings that these opinions were tainted as a result.

1  Furthermore, the ALJ had no opportunity to reach such a conclusion as it concerned the opinion

2  of Dr. Flores.

3          In addition, under the de minimis standard of step two, Plaintiff's complaints were

4  not so incredible as to be considered not severe.  Plaintiff consistently complained over an

5  extended period of time of migraine headaches.  There is no evidence that any physician

6  considered her to be malingering.  Every treating physician described either a physical or

7  psychological source for Plaintiff's pain and prescribed medication or alternative modes of

8  treatment such as behavior therapy or acupuncture.  See Webb, 433 F.3d at 688.  When

9  considered individually and in combination, there is clearly some medical evidence of Plaintiff's

10  impairment.  But see Ukolov v. Barnhart, 420 F.3d 1002 (9th Cir. 2005)(affirming ALJ denial at

11  step two when even treating physician was hesitant to conclude that claimant's symptoms and

12  complaints were medically legitimate).

13          While a finding that Plaintiff has met their burden at step two does not prove

14  disability, Webb, 433 F.3d at 688, remand for further proceedings is required in this case.  Based

15  upon the medical evidence in the record, including the reports considered by the ALJ as well as

16  the evidence from Dr. Flores provided after the ALJ's decision, Plaintiff has met her burden at

17  step two.  The ALJ should continue the sequential analysis beyond step two as there was not

18  substantial evidence to show that Plaintiff's claim was "groundless."  Smolen, 80 F.3d at 1290.

19          c.  The ALJ's Credibility Determination Applied the Proper Legal Standard and Was

20  Based Upon Substantial Evidence Contained in the Record Before Him.

21          The ALJ found Plaintiff's complaints of physical and mental impairments to be

22  not credible.  In reaching this conclusion, the ALJ noted the lack of objective medical evidence

23  supporting Plaintiff's complaints of physical or mental impairment.  AT 17.  In addition, the ALJ

24  relied upon Plaintiff's extensive daily activities to conclude that her impairments were not as

25  severe as alleged.  Based upon the evidence before the ALJ at the time of his decision, this

26  finding was not in error.

1    The ALJ determines whether a disability applicant is credible, and the court defers

2    to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

3    Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

4    an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

5    v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

6    supported by "a specific, cogent reason for the disbelief").

7    In evaluating whether subjective complaints are credible, the ALJ should first

8    consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

9    F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

10   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

11   medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

12   (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

13   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

14   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

15   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

16   55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

17   and effect of symptoms, and inconsistencies between testimony and conduct also may be

18   relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

19   to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

20   the ALJ in determining whether the alleged associated pain is not a significant nonexertional

21   impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

22   may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

23   1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

24   F.2d 172, 177 n.6 (9th Cir. 1990).  Without affirmative evidence of malingering, "the

25   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

26   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

1          The ALJ described the lack of medical findings supporting Plaintiff's complaints.

2    AT 17-18.  Dr. Sokolov found nothing objective upon which to base his treatment.  AT 123-33.

3    Dr. Ghoushal found all clinical signs to be normal and relied solely on Plaintiff's medical history

4    to diagnose migraine headaches.  AT 126.  Examining physician Dr. Selcon, found nothing

5    remarkable.  AT 139.  Dr. Toussi reported essentially normal results from his physical

6    examination.  AT 166.  Dr. Moghaddas determined that Plaintiff was functioning fairly well.  AT

7    146.  Doctors with the State Agency found nothing abnormal with Plaintiff physically, AT 175,

8    and noted only mild mental impairment, AT 185.  Even Dr. Flores found little objective evidence

9    to support Plaintiff's complaints, suspecting instead that there was a "strong subjective

10   component" to her impairments.  AT 250.

11         The ALJ also described the absence of objective evidence in the record.  AT 17-

12   18.  Plaintiff's 1993 x-ray was normal enough to require no further treatment.  AT 189.  An x-ray

13   of Plaintiff's back by Dr. Toussi was normal.  AT 168.  The MRIs ordered by Dr. Flores found

14   no organic cause for Plaintiff's impairments.  AT 216-18.

15         The lack of objective medical evidence to corroborate Plaintiff's subjective

16   complaints of pain, in and of itself, is not a proper basis to discredit Plaintiff.  See Smolen v.

17   Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  However, the ALJ is permitted to utilize the

18   ordinary techniques of credibility evaluation, including Plaintiff's daily activities and testimony

19   by third-party witnesses.  Id. at 1284; see also 20 C.F.R. 416.929, SSR 96-7p.  Given the extent

20   of Plaintiff's daily activities along with the lack of objective findings, the ALJ's conclusion that

21   Plaintiff was not entirely credible is not in error.

22         The ALJ properly noted that extensive daily activities performed by Plaintiff.  AT

23   17.  Plaintiff raises two children without significant limitations.  In her role as mother, Plaintiff

24   cooks, cleans, takes her children to school and other activities, participates in school groups, and

25   attends their athletic competitions.  AT 67, 69, 192.  In addition, the record demonstrates that

26   Plaintiff enjoys reading, watching television, and using the computer.  AT 70.

1         In addition, the ALJ correctly noted that there is no indication that Plaintiff's

2 social relations have suffered as a result of her impairments. AT 17. She is able to spend time

3 with family and friends. AT 67, 194. She is in a stable relationship with a boyfriend. AT 193.

4         These findings were echoed by third-party witnesses. Plaintiff's mother described

5 the numerous limitations on Plaintiff's otherwise normal daily activities that occurred when a

6 migraine headache struck. AT 73-81. Absent an ongoing migraine headache, Plaintiff's mother

7 stated that Plaintiff had no limitations in her ability to care for her children, AT 73, prepare meals

8 and do household chores, AT 75, shop, AT 76, read and work on the computer, engage in social

9 activities, attend her sons' baseball games, AT 77, and perform all physical movements,

10 including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair-

11 climbing without limitation, AT 78.

12         Plaintiff's ability to engage in some daily activities does not compromise her

13 subjective complaints of pain. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);

14 Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th

15 Cir.1989) (holding that one need not be "utterly incapacitated" in order to be disabled).

16 However, the ALJ described numerous activities that Plaintiff completes that are consistent with

17 those necessary for productive work. See Morgan, 169 F.3d at 600 (finding plaintiff's ability to

18 fix meals, do laundry and yard work, and occasionally care for a friend's child sufficient to

19 undermine complaints of pain). Based upon the record before him, the ALJ's credibility

20 determination was supported by substantial evidence.

21         Furthermore, Plaintiff complained of disabling neck and back pain. However,

22 third-party observers of Plaintiff failed to note any limitations resulting from this physical ailment.

23 Plaintiff's mother did not describe any limitations related to PTSD, or neck and back pain. Ms.

24 MacMillan's record indicate few problems with any of the physical complaints alleged by

25 Plaintiff. In 14 sessions spread out over seven months in which Plaintiff described in detail her

26 /////

1   feelings and activities, Ms. MacMillan recorded only one instance where Plaintiff described any

2   problem with migraines or back and neck pain.  AT 194.

3          The factors considered by the ALJ were all valid and supported by the record

4   before him.  While Plaintiff clearly produced evidence to show that she suffered from severe

5   impairment, the lack of objective clinical findings along with her extensive daily activities

6   evidence a level of impairment significantly less than alleged, casting doubt upon Plaintiff's

7   credibility.  However, given the need to remand this case for continuation of the sequential

8   analysis, the ALJ's assessment of Plaintiff's credibility is not fixed.  The ALJ's credibility

9   determinations may be revisited after consideration of the medical evidence from Dr. Flores.  Any

10  opinion regarding Plaintiff's credibility offered by the ALJ at that time must be supported by the

11  complete record, including all of the medical and other evidence available to the ALJ at the time

12  of his decision.

13          For the foregoing reasons, this matter will be remanded under sentence four of 42

14  U.S.C. § 405(g) for further development of the record and further findings addressing the

15  deficiencies noted above.

16          Accordingly, IT IS HEREBY ORDERED that:

17          1.  Plaintiff's motion for summary judgment is denied;

18          2.  The Commissioner's cross motion for summary judgment is denied; and

19          3.  This matter is remanded for further proceedings consistent with this order.

20  DATED:  September 14, 2006.

21

22

23

UNITED STATES MAGISTRATE JUDGE

24  13

25  Rendon.ss.wpd

26

14